UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------
: 
UNITED STATES OF AMERICA,    :    CASE NO. 1:18-CR-393
:
    Plaintiff,    :
:
vs.    :    OPINION & ORDER
:    [Resolving Doc. 21]
STEVEN F. STEWART, JR.,    :
:
    Defendant.    :
:
------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

A grand jury indicted Defendant Steven F. Stewart, Jr., for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).[1] Stewart moves to suppress evidence that the government seized during a traffic stop and pat down search of his person.[2] On September 18, 2018, the Court held a hearing on the motion. For the following reasons, the Court **DENIES** Stewart's motion to suppress.

## I. Background

The case facts are not subject to significant dispute.

On the evening of May 9, 2018, around 9:00 p.m., Cleveland Police Department detectives Brian Middaugh and James Skernivitz received a radio broadcast that shots had been fired on West 27th Street and Barber Avenue in Cleveland, Ohio.[3] The broadcast reported an anonymous tip that a silver Nissan and red Toyota Corolla were involved in the shooting.[4]

---

[1] Doc. 1.
[2] Doc. 21. The United States opposes. Doc. 22.
[3] Transcript of Proceedings before the Honorable James Gwin on September 18, 2018, at 3:12-14.
[4] *Id.* at 15:10-12.

Case No. 1:18-cr-393
Gwin, J.

Responding to this call, the detectives spotted a black Jeep Patriot parked on West 27th Street near its intersection with Queen Avenue.[5] The Patriot vehicle's doors were open and music was playing.

Two individuals—Larry Cruz and the Defendant—stood on either side of the Patriot.[6] The Patriot was parked in the wrong direction (against traffic), and was also parked on the wrong side of the street, and parked in an area marked "no parking any time."[7]

The detectives, who were wearing tactical police vests with the word "POLICE" on the front, approached the parked vehicle from behind and turned on the police lights of their unmarked car.[8] As the detectives stepped out of the car, they identified themselves as police and asked Cruz and Stewart to put their hands up, which they did.[9] As the detectives approached Cruz and Stewart, they smelled marijuana.[10]

When Detective Middaugh approached the driver's side of the vehicle, Larry Cruz volunteered that he was armed.[11] Detective Skernivitz, who had approached the vehicle passenger side, asked Stewart whether Defendant Stewart was also armed. Stewart responded that he also had a gun,[12] that was in his waistband.[13] Detective Skernivitz

---

[5] *Id.* at 5:11-12.
[6] *Id.* at 6:24-7:3.
[7] *Id.* at 5:24-6:3.
[8] *Id.* at 6:12-18.
[9] *Id.* at 7:17-21.
[10] *Id.* at 6:13; 29:4.
[11] *Id.* at 7:25.
[12] *Id.* at 30:7-9.
[13] *Id.* at 35:9.

Case No. 1:18-cr-393
Gwin, J.

handcuffed Defendant Stewart, and took the gun from his waistband; during a pat-down search of his person, the detective also discovered marijuana.[14]

After the search, the detectives placed both men in the back of their squad car and gave their Miranda rights.[15] Detective Middaugh wrote Cruz a citation for the traffic violation, and issued both Cruz and Defendant Stewart a minor misdemeanor marijuana citation.[16]

## II. Discussion

A criminal defendant can ask to suppress evidence that was obtained in contravention of the Fourth Amendment.[17] The Fourth Amendment protects citizens from "unreasonable searches and seizures."[18] Warrantless searches and seizures are presumptively unreasonable,[19] and the government has the burden of showing that a warrantless search was lawful.[20] Thus, the seized evidence is subject to suppression unless the government shows that the search and seizure fits one of a "few specifically established and well-delineated exceptions" to the warrant requirement.[21]

Here, two exceptions are relevant. First, a warrantless stop of an automobile is reasonable where the police have probable cause to believe that a defendant has committed a traffic violation.[22] Second, an officer may briefly detain an individual and

---

[14] *Id.* at 30:20-21.
[15] *Id.* at 8:5-7.
[16] *Id.* at 8:17-20.
[17] *See Murray v. United States*, 487 U.S. 533, 536-37 (1998).
[18] U.S. Const. amend. IV.
[19] *See Katz v. United States*, 389 U.S. 347, 357 (1967).
[20] *United States v. Hynes*, 301 F.3d 669, 677 (6th Cir. 2002).
[21] *Katz*, 389 U.S. at 357.
[22] *See Wren v. United States*, 517 U.S. 806, 810 (1996).

-3-

"frisk" the detained person for weapons where the officer "has reason to believe that he is dealing with an armed and dangerous individual."[23]

Defendant's motion poses two issues: the propriety of the initial stop, and the detectives' subsequent weapons pat-down.

### A. The Initial Stop

The detectives testified that after spotting Defendant Stewart and Larry Cruz standing next to Cruz's illegally parked car, they turned on their car's police lights, identified themselves as police, and asked the two men to put their hands up. Both Cruz and Defendant Stewart complied with this request. This initial show of authority, coupled with the Defendant's submission to this authority, is a "seizure" within the meaning of the Fourth Amendment.[24]

This seizure was lawful because the detectives had probable cause to believe that the car was illegally parked. Stops made with probable cause to believe that a traffic violation has occurred do not violate the Fourth Amendment.[25] Because the detectives did not know which of the individuals standing by the car owned it, the Court finds that probable cause existed with respect to both Cruz and Stewart at the time of the stop. Courts regularly analyze parked vehicle stops and their passengers' seizure as traffic stops for the purposes of the Fourth Amendment.[26]

---

[23] *Terry v. Ohio*, 392 U.S. 1, 27 (1968).
[24] *See Bennett v. City of Eastpointe*, 410 F.3d 810, 933 (6th Cir. 2005) (holding that Fourth Amendment seizure occurred where officer activated siren and citizens halted in response to this show of authority).
[25] *See United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) ("[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." (internal quotation marks and citation omitted)).
[26] *See United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008) (analyzing seizure of parked car and its occupants as a traffic stop under *Terry*); *United States v. Graham*, 483 F.3d 431, 437 (6th Cir. 2007) (holding

Case No. 1:18-cr-393
Gwin, J.

Defendant argues that the stop was unlawful because the nearby shooting radio report—not the parking violation—was the detectives' actual motive for the stop. And the silver Nissan and red Toyota anonymous tip, Defendant argues, could not support reasonable suspicion or probable cause to stop Larry Cruz's black Jeep.

This is probably true,[27] but it is not relevant. The Fourth Amendment analysis "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken."[28] The existence of probable cause does not depend on "what else the officer knew or suspected about the traffic violator at the time of the stop."[29] This result might be different if the officer only discovered the traffic violation after the stop.[30]

But here, Detective Middaugh testified that the traffic violation was readily apparent before the stop, and that the "no parking any time" sign was located directly above the parked car. Probable cause existed at the time of the stop.

---

that stop of parked car and seizure of its occupants was lawful because car was parked in "no parking" zone and the car's owner was issued a citation).

[27] The government argues, in the alternative, that the detectives had reasonable suspicion under *Terry* to make the stop absent the parking violation, because Defendant was in a high crime area in the evening, in an area where a shots had been fired. But mere presence in a high crime area does not provide reasonable suspicion to believe that individuals in the area are involved in crime. *See Hoover v. Walsh*, 682 F.3d 481, 495 (6th Cir. 2012) ("It is well-settled that, standing alone, mere presence in a high crime area is insufficient 'to support a reasonable, particularized suspicion that the person is committing a crime.'" (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))). Further, the information available to police at the time of the stop in no way suggested that the parked Jeep was involved in the shooting. The opposite is true, because the tip indicated that a different model vehicle was involved. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

[28] *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985) (internal quotation marks and citation omitted).

[29] *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc).

[30] *See id.* at 391 ("If an officer testifies at a suppression hearing that he in fact did not see the traffic violation or did not have probable cause to believe a violation had occurred, but only discovered after the stop or the arrest that the suspect had committed a traffic violation, a court could not find that probable cause existed. Such a stop would be unreasonable under the Fourth Amendment.").

## B. The *Terry* Frisk

The government must also demonstrate that the warrantless search of Defendant Stewart's person was lawful.[31] After a lawful stop, a police officer may conduct a "frisk" for weapons when the officer concludes that "the person whom he ha[s] legitimately stopped might be armed and presently dangerous."[32]

Defendant's admission that he was armed does not, taken alone, make the search of his person reasonable. A frisk must be supported by suspicion that the person detained is both armed *and dangerous*.[33] But, police officers with probable cause to arrest can lawfully conduct a full search of the arrestee's person for weapons.[34]

When Detectives Middaugh and Skernivitz approached, Stewart admitted that he concealed a handgun within his waistband. Unless a person has a concealed handgun permit (and tells any approaching law enforcement official that he has a permit), "[n]o person shall knowingly carry or have, concealed on the person's person . . . a handgun."[35] And officers can seize any contraband items within the arrestee's immediate control.[36]

---

[31] *See Graham*, 483 F.3d at 436 ("It is hard to imagine how suspicion of a parking violation, by itself, could ever justify a protective search of a suspect's person. While the officers here were completely within their rights to carry out their duties related to the parking violation, with respect to investigating any other crimes, they were bound by the same constitutional limitations that they would have been had they encountered [defendant] while he was doing nothing illegal at all.").

[32] *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977).

[33] *See Northrup v. City of Toledo Police Dept.*, 785 F.3d 1128, 1131 (6th Cir. 2015) (holding that stop was unlawful under *Terry* because police had no reason to think that individual openly carrying firearm was dangerous).

[34] *United States v. Robinson*, 414 U.S. 218, 235 (1973) (search incident to lawful custodial arrest "is not only an exception to the warrant requirement of the [4th] Amendment, but is also a 'reasonable' search under that Amendment").

[35] Ohio R.C. 2923.12(A)(2).

[36] *Robinson*, 414 U.S. at 224 ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee.").

Case No. 1:18-cr-393
Gwin, J.

Independent of their right to arrest Stewart for carrying a concealed weapon, the detectives enjoyed reasonable suspicion that Defendant was both armed and dangerous. First of all, the detectives testified smelled marijuana coming from the car.[37] Furthermore, the detectives found Defendant in a high crime area at night[38] a mere block away from a recent shooting. The Defendant's temporal and spatial proximity to the shooting, coupled with his possession of a firearm, supports a reasonable suspicion of dangerousness despite the mismatch between the Jeep and the cars described in the anonymous report.

In sum, the detectives encountered the Defendant when he was armed and probably intoxicated in a high crime area at night, a block away from a street where a shooting had occurred minutes before. These considerations, taken together, give probable cause to arrest Defendant for carrying a concealed weapon and also support the conclusion that Defendant was both armed and dangerous and that the pat-down search of his person was lawful under *Terry*.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to suppress.


IT IS SO ORDERED.


Dated: September 25, 2018                     s/    *James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE

---

[37] *See United States v. Noble*, 364 F. App'x 961, 965 (holding that pat-down of vehicle's occupants was reasonable because officers smelled marijuana emanating from the car).
[38] *See United States v. Pacheco*, 841 F.3d 384, 394 (presence in high crime area at night is one consideration among others relevant to the *Terry* analysis).