# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:18-CR-393 |
| Plaintiff, | : | |
| | : | JUDGE JAMES S. GWIN |
| vs. | : | |
| | : | |
| STEVEN STEWART, | : | **SENTENCING MEMORANDUM** |
| | : | **FOR STEVEN STEWART** |
| Defendant. | : | |

Defendant Steven Stewart, through undersigned counsel, submits the instant Sentencing Memorandum for the Court's consideration and requests a sentence, as calculated and reviewed pursuant to Title 18, United States Code §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Counsel attaches the following Memorandum to assist the Court in fashioning Mr. Stewart's sentence.

                              Respectfully submitted,

                              STEPHEN C. NEWMAN
                              Federal Public Defender
                              Ohio Bar: 0051928

                              */s/ Jeffrey B. Lazarus*
                              JEFFREY B. LAZARUS
                              Assistant Federal Public Defender
                              Ohio Bar: 0079525
                              1660 W. 2nd Street, Suite 750
                              Cleveland, Ohio 44113
                              Telephone: (216) 522-4856
                              Facsimile: (216) 522-4321
                              jeffrey_lazarus@fd.org

                              Attorney for Steven Stewart

**MEMORANDUM**

**I.     Introduction**

Defendant Steven Stewart now appears for sentencing. In line with the presentence report, his sentencing guideline range is 41 to 51 months, at total offense level 18, Criminal History Category IV. This Memorandum details mitigation not included in the presentence report that supports a fair sentence under the factors codified at 18 U.S.C. § 3553(a). Steven requests this Court impose a sentence of 24 months of imprisonment, which would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

**II.     The Charges and Steven Stewart's Acceptance of Responsibility**

On September 26, 2018, Steven pled guilty to the indictment for illegally possessing a firearm, in violation of 18 U.S.C. § 922(g)(1). At his plea hearing, Steven accepted responsibility for his offense by pleading guilty, and agreeing to the factual basis as outlined by the government. He also provided a detailed and genuine statement to the probation officer during his presentence interview accepting responsibility for his offense. Dkt. 30, Presentence Report, ¶ 9. In this letter, Steven recognizes the mistakes he made in this case and previously in his life, but asks this Court to consider his successes as a father and a worker. Steven will expand upon these in his upcoming allocution.

**III.    Applicable Legal Standards**

In *Kimbrough v. United States*, 552 U.S. 85 (2007), the United States Supreme Court reaffirmed the framework for Courts fashioning a defendant's sentence. Under *Kimbrough*, Courts must treat the Guidelines as the "starting point and the initial benchmark" when formulating a reasonable sentence. *Id.* However, the Guidelines are instead merely the starting point for a nuanced assessment of each individual case and the appropriateness of the Guidelines

sentence must be judged against the other factors in 18 U.S.C. § 3553(a). *Id.* While the statute still requires a court to give respectful consideration to the Guidelines, the court must tailor the sentence in light of the other factors in § 3553(a) as well. *Booker v. United States*, 543 U.S. 220, 245-246 (2005).

The totality of these factors promotes a "holistic" sentence which may result in sentences lower than those previously calculated under a mandatory guideline scheme because the possible sentencing range no longer prohibits courts from considering any specific factor. Another crucial statutory sentencing authority is 18 U.S.C. § 3661, entitled "Use of information for sentencing." This provision also emphasizes a holistic sentencing approach, stating:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C § 3661. In applying the 18 U.S.C. § 3553(a) sentencing factors and these legal standards, there is ample support for the conclusion that Steven Stewart warrants a sentence at the low-end of his sentencing guideline range, that being 24 months in prison.

**IV.  Steven Stewart's personal history and characteristics**

Steven Stewart is a kind and caring 35-year-old man who has spent his entire life in the Cleveland area. Steven grew up in a poor neighborhood in Cleveland, which was rampant with drugs, gangs, and violence. His parents were never married, but they were close because of the children they shared. Steven's father had long history of drug problems and a severe drug addiction to heroin. PSR at ¶ 63. He saw his father from time to time, but Steven was mostly raised by his mother and his step-father. As a child, Steven was very involved in playing sports, in his church, and got decent grades in school. At the age of twelve, Steven's whole life changed

when his father was murdered by his father's girlfriend. His girlfriend was sentenced to ten years in prison for her crime.

Obviously, this event upset Steven, and he started to become withdrawn and depressed. About two years later, another traumatic event impacted him greatly. Steven came home from school and saw his mother naked in bed with Steven's cousin. To this day, Steven is not sure what led to this act between his cousin and his mother, but it greatly upset Steven. He began to resent his mother and lose trust in her, and at age fifteen stopped relying on her for advice and support. Still being upset from the murder of his father, Steven really felt he had no parents, and turned to the neighborhood for role models. His aunt tried to step up and convinced Steven to move to her home in Cleveland Heights, as a fresh start. Steven complied for a little while, but was too angry and misguided to really benefit. In the tenth grade, he dropped out of school and began using marijuana and alcohol.

It was not long before Steven found himself selling drugs in order to pay for his own drug habit. As detailed by the PSR, Steven obtained a number of arrests and convictions between ages 18 and 24. In fact, he had thirteen convictions during that time, PSR at ¶¶ 22-34, eight of which were drug-related. During this six-year period, Steven spent a lot of time in the Ohio prison system, or on probation/parole. Steven knows that he was out of control during this period of his life.

During his time in prison, Steven did lots of soul searching and tried desperately to find out the person he wanted to be. He concluded that he didn't want to be a criminal or a drug dealer, but wanted to make something of himself. Most importantly, he wanted to be proud of who he was, and wanted to be a positive role model to his future children. Upon his release from prison in 2009, PSR ¶ 34, he vowed to put this plan into action. Over the next few years, Steven

dedicated himself to working in order to be able to provide for himself. He worked as a roofer, as a waiter and dishwasher in restaurants, and as a furniture mover. As denoted in the PSR, he more recently secured jobs at various restaurants and Lakewood Country Club. PSR at ¶ 74. At the time of the offense he was a driver for UberEats, and was in the process of securing a job at FedEx.

Since his release from state prison in 2009 Steven demonstrated his commitment to staying away from selling drugs. As indicated in the presentence report, Steven obtained convictions between 2009 and 2018, but none of these convictions involved drug trafficking. PSR at ¶¶ 35-50. Of these convictions, only one was a felony, for drug possession, a felony of the fifth degree. PSR ¶ 47. Eleven of these convictions were driving-related, either driving with a suspended license or playing music too loud. The remaining four convictions were all minor misdemeanor offenses of either marijuana possession or disorderly conduct. PSR at ¶¶ 41, 45, 47, 50. Steven will not claim that he was a perfect citizen during these last nine years, but does represent to this Court that he his drug-dealing life behind him. He was committed to working, to his family, and to staying away from the negative influences.

This turn-around by Steven is not unheard of for defendants who commit lots of offenses as a young adult. The Supreme Court has recognized that adolescents and teenagers are "comparative[ly] immature[e]," are "more vulnerable or susceptible to negative influences and outside pressures," and have a character "not as well formed as that of an adult." *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005). For these reasons, "their irresponsible conduct is not as morally reprehensible as that of an adult," and "a greater possibility exists that a minor's character deficiencies will be reformed." *Id.* at 570. Steven, in his late teens and early 20s

5

demonstrated significant lack of maturity, but as he grew older and went into his mid-20s, he grew more mature and demonstrated such.

Steven credits his children for being the inspiration for his dramatic turn-around. Shortly after his release from prison in 2009, Steven met Felicia Stapleton, and the two began a relationship. When they met, Felicia had two young children of her own. They were not Steven's children, but he got such joy and pride from caring for them, that they became his inspiration for staying away from drugs and continuing to work. Steven considered these two children to be his own, even though they were not his biological children. Steven and Felicia got married in 2016. PSR at ¶ 65. They separated last year and are no longer in a romantic relationship, but Steven is still very much a part of Felicia's life and part of her childrens' lives.

For roughly the last eight years, Steven has been a good parent to these children. He has attended PTA meetings, gone to their sporting events, helped them with their homework, and been available when they needed him. His children all get good grades in school. He takes great pride in having seen these children grow up with a loving father figure, and knows he is a good father to them. Steven has been incarcerated since the beginning of the instant case and has not been home since August. As a result, his children are extremely upset and have become depressed without having their father in their life.

In November of 2018, Steven's girlfriend had a son. Steven was incarcerated on this case when his son was born, but plans on being a big part of his son's life. Steven very much regrets not being able to be there for his son's birth and to be able to assist his girlfriend in caring for their infant child. His girlfriend, Laura Esarey, has written a letter of support for this Court's consideration, which is attached as Exhibit A, detailing how caring and warm Steven is, and what a good father he will be to their son.

6

In fashioning his sentence, Steven asks this Court to consider his personal history and the circumstances his family now faces. Steven suffered two major traumas during his formative years – the murder of his father and the encounter surrounding his mother – both of which had a profound effect on him and sent him down a dark path. Steven began a life he was not proud of, through drug-dealing and crime, but he has paid for those acts, and has made a dramatic turn-around since 2009. He has not sold drugs, and been consistently employed, and has become a good father to two children. He asks this Court to consider these circumstances in fashioning his sentence.

## V.     The circumstances surrounding his offense

Despite the circumstances of the last ten years, as detailed above, Steven illegally possessed a firearm on May 9, 2018. Some of the events that night were detailed in the suppression hearing before this Court. On that evening, Steven and his friend Larry Cruz were on Cleveland's near-west side, at W. 26th and Queen Avenue. At that corner is a makeshift memorial for a young man who was shot and killed. The victim of this shooting was a friend of Steven and Larry. That night they went to this corner to pay tribute to their murdered friend. However, because this area was known for its gun violence, both Larry and Steven brought guns with them for protection.

Steven and Larry parked their car in front of the memorial; while they were paying their respects to their friend, there was a drive-by shooting down the street by another group of guys. In response to the shots fired, Cleveland Police officers came to the area and encountered Larry and Steven near their car. Because the car was parked on the wrong side of the street, officers came up to Larry and Steven. Steven and Larry both complied with the officer's order to put their hands up, and then immediately told officers they had a gun. As detailed by the officers

during the suppression hearing, Steven and Larry did not try to run, did not lie or try to deceive the officers, and they were compliant and cooperative.

Steven's demeanor and cooperative actions during the arrest should be considered in fashioning his sentence. Steven complied with all the requests of the officers and immediately disclosed that he was illegally possessing a firearm. He was not engaged in any other illegal activity. In consideration of these facts, a downward variance is warranted.

Given the facts surrounding Steven's arrest, he also asks this Court to consider the other people arrested and charged for their offenses that night. Steven's friend, Larry Cruz, was also arrested that night for possessing his own firearm. Originally, Steven and Larry were both charged as co-defendants in the Cuyahoga County Court of Common Pleas, and both were charged with weapons charges. PSR at ¶ 58; *State v. Cruz*, Case No. 18-CR-628707. For reasons that are still not clear, Steven's state case was dismissed and he was charged in the instant case in federal court, for which he now has a sentencing guideline range of 41 to 51 months. By comparison, Larry received a very favorable deal. Larry's charge was amended to a misdemeanor charge of carrying concealed weapon and he was given a sentence of no jail time. In fact, the court ordered that he receive no probation at all. A copy of the journal entry from Larry's sentencing is attached as Exhibit B1. Steven asks this Court to consider this disparity in fashioning his sentence.

Furthermore, he asks this Court to consider the disparity in sentencing exposure as compared to Angel Figueroa and Ryan Fowlkes. These two people are the men who were arrested that night for firing gunshots that led to police responding to the area. These two were the men the police were actually looking for when they encountered Larry and Steven. Fowlkes and Figueroa are not connected in any way to Steven and Larry and Steven and Larry had no

8

involvement in the shooting whatsoever. Fowlkes and Figueroa were both indicted in Cuyahoga County for carrying concealed weapons and improperly handling firearms in a motor vehicle; Figueroa was also charged with felony drug possession. *State v. Figueroa/Fowlkes*, Cuyahoga County Case No. 18-CR-628701. As indicated by the attached journal entries, Ex. B2 and B3, Figueroa pled guilty to one count of carrying concealed weapon, a felony of the fourth degree, and one of count of drug possession, a felony of fifth degree; Fowlkes pled guilty to attempted carrying a concealed weapon, a felony of the fifth degree. Figueroa is scheduled to be sentenced on January 8, and Fowlkes is to be sentenced on January 7. While not yet sentenced, Figueroa's charge carries a statutory maximum of 18 months of imprisonment, and Fowlkes's charge carries a statutory maximum of 12 months of imprisonment.

Steven asks this Court to consider this sentencing disparity as compared to the others arrested that night. Figueroa and Fowlkes actually fired guns in the neighborhood that night, and the harshest sentence Figueroa could receive is 18 months, 12 months for Fowlkes. In fact, they are both likely to receive less than the statutory maximum. Steven was not involved in firing any guns that night and was not associated in any way with these shooters, but for his illegal possession of a firearm, he faces a sentencing range of 41 to 51 months of imprisonment. Furthermore, Larry Cruz, arrested with Steven for the exact same conduct, receives a sentence of no jail time and no probation term. In consideration of these gross disparities, Steven asks this Court to grant him a variance to 24 months.

**VI.     Criminal History Category IV over-represents the seriousness of Steven Stewart's criminal history**

Steven asks this Court to grant a variance or departure based on the over-representation of his criminal history category. The presentence report properly concludes that Steven falls in Criminal History Category IV. Dkt. 30, Presentence Report, ¶ 53. However, this designation

9

over-represents the seriousness of his criminal history, and he asks this Court to grant him either a downward variance or a downward departure pursuant to U.S.S.G. § 4A1.3. A district judge may grant a downward departure under U.S.S.G. § 4A1.3(b)(1) "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009); *United States v. Berry*, 290 F. App'x 784 (6th Cir. 2008). In making this determination, the district court can consider the types of prior convictions, the age of the convictions, and signs of rehabilitation. *United States v. Orozco-Torres*, 318 F. App'x 328, 336 (6th Cir. 2008) (citing *United States v. Fletcher*, 15 F.3d 553, 557 (6th Cir. 1994)). In support of such a departure, Steven asks this Court to consider the age of the nature of his convictions, which is reliable information that his criminal history category substantially over-represents the seriousness of his criminal history.

As detailed above, Steven was a troubled youth who attained a significant number of drug trafficking offenses between the ages of 18 and 24. These offenses both increased his base offense (PSR at ¶ 11) and his criminal history score (PSR at ¶ 34). However, since the age of 24, ten years ago, Steven has a very different criminal history. Since 2009, Steven has sixteen prior convictions, of which eleven are driving related (driving with a suspended license or playing music too loud), and four are minor misdemeanor offenses of either marijuana possession or disorderly conduct. PSR at ¶¶ 41, 45, 47, 50. The remaining conviction is a felony of the fifth degree for drug possession. PSR at ¶ 47. Despite having only one felony conviction over the last ten years, Steven still receives six criminal history points; four for the convictions themselves, and two additional points because at the time of the instant offense he was probation for one of his driving with a suspended license charges. PSR at ¶¶ 51-52. Jumping two criminal history

categories because of a plethora of driving-related offenses and minor misdemeanor offenses improperly inflates his Criminal History Category. Steven requests this Court find that Criminal History Category III more accurately represents his criminal history. He therefore requests, under U.S.S.G. § 4A1.3, that this Court grant him a downward departure to properly reflects the true nature of his criminal history category.

**VI.    Conclusion**

Considering all the mitigation set forth in this memorandum, together with Steven's allocution at his sentencing hearing, he requests this Court impose a sentence of 24 months of imprisonment, which is sufficient but not greater than necessary to achieve the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

    Respectfully submitted,

    STEPHEN C. NEWMAN
    Federal Public Defender
    Ohio Bar: 0051928

    */s/ Jeffrey B. Lazarus*
    JEFFREY B. LAZARUS
    Assistant Federal Public Defender
    1660 W. 2nd Street
    Skylight Office Tower, Suite 750
    Cleveland, Ohio 44113
    Telephone: (216) 522-4856; Fax: (216) 522-4321
    E-Mail: jeffrey_lazarus@fd.org

    Attorney for Steven Stewart

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2019, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender